NATIONAL PARK BANK of New York, Respondent, *v.* WARREN
N. GODDARD et al., Appellants.

NATIONAL PARK BANK of New York, Respondent, *v.* WARREN
N. GODDARD et al., Appellants.

The members of the firm of L. Bros. & Co formed the purpose and pro-
ceeded steadily and continuously in its execution, of defrauding those
with whom it was able to deal by procuring, through false representa-
tions, their money or property without payment and intending not to
pay.   Plaintiff, relying upon false representations so made loaned to the
firm, by discounting its paper about $90,000, and discovering the fraud,
attached, the whole stock of goods of said firm which it found in its
possession and apparent ownership; this consisted principally of ready-
made clothing.   Many creditors, who, induced by the same or similar false
representations, had sold to said firm the materials out of which said
clothing was manufactured, being thus advised of the fraudulent scheme,
elected to rescind their contracts of sale for fraud, and each brought
action of replevin against the sheriff and the fraudulent vendees to recover
the specific property sold.   Goods purchased of different vendors who
had brought replevin suits went into the same garments as did also
goods not sold by them. Plaintiff brought this action, asking for an
adjudication as to the respective claims of the plaintiff, for the appoint-
ment of a receiver of the property and for an injunction restraining
the prosecution of the replevin suits.   *Held*, that a court of equity had
jurisdiction to intervene to prevent a multiplicity of suits involving
conflicting claims to the same property which a court of law could not
but which equity could solve without working injustice, and that plain-
tiff although as attaching creditor it had no legal title to the property
attached, yet was the real party interested and so, was entitled to bring
the action, and thus turn the garments into money to be distributed in
just and fair proportions among the claimants.
Some of the defendants claimed that the property replevied by them was
delivered to L. Bros. & Co. to be sold on commission, others that goods
sold by them were not made up and that there was no dispute as to the
identity of the unmanufactured goods.   *Held*, that as these facts were
new matter alleged outside of the complaint which if established might
make out a defense as to those defendants, and as to which plaintiff had a
right to be heard, they did not affect the jurisdiction of the court, but only
the right to the relief sought as the facts should be determined on the trial.
Neither the sheriff nor the coroner who acted in the replevin suits were
made parties.   *Held*, that they were proper parties and should be brought
in, but that this did not affect the question of jurisdiction.
Reported below, 62 Hun, 31.

(Argued February 29, 1892; decided March 22, 1892.)

Appeal in the first above-entitled action, from order of the General Term of the Supreme Court in the first judicial department made November 13, 1891, which affirmed an order of the Special Term appointing a receiver of the property of Levy Brothers & Co. and granting an injunction.

Appeal in the second above-entitled action from order of the General Term of the Supreme Court in the first judicial department, made November 13, 1891, which affirmed an order of Special Term instructing the special receiver of Levy Brothers & Co. with reference to property subject to his receivership.

These actions were brought by the plaintiff as an attaching creditor of Levy Brothers & Co. against Ferdinand Levy as one of the coroners of the city and county of New York, and divers creditors of Levy Brothers & Co., (1) to restrain the prosecution of several actions brought by said several creditors against the sheriff of the city and county of New York for replevin; (2) for the appointment of a receiver of the property in litigation; (3) for an adjudication upon the various claims of the plaintiff and defendants to the property in question, and for other relief generally.

The facts, so far as material, are stated in the opinion.

*Gibson Putzel* for appellants Goddard and others. A receiver can only be appointed of property which is the subject of an action, before final judgment, on the application of a party who establishes an apparent right to or interest in the property where it is in the possession of an adverse party. (Code Civ. Pro. § 713; *O'Mahoney* v. *Belmont*, 62 N. Y. 143; *Smith* v. *Wells*, 20 How. Pr. 158.) The plaintiff has no lien upon, interest in, or title to the property levied upon by the sheriff, or seized by the coroner under the writs of replevin, and, therefore, cannot maintain any action in respect to the property so levied upon and seized. (*Pierce* v. *Kingsmill*, 25 Barb. 633; *Mumper* v. *Rushmore*, 79 N. Y. 21; *Snezey* v. *Lott*, 21 id. 481; Freeman on Ex. § 2757; *Hamblet* v. *Herndon*, 3 Humph. 34; *Commonwealth* v.

*Watmergh*, 6 Whart. 117; *Ladd* v. *North*, 2 Mass. 514; *Skinner* v. *Stuart*, 39 Barb. 208; Story on Bailments, §§ 93, 95, 125, 129; *Giles* v. *Grover*, 6 Bligh, 289; *Commonwealth* v. *Green*, 111 Mass. 392; Code Civ. Pro. §§ 655, 677, 679, 706, 710; *Brownell* v. *Manchester*, 18 Mass. 238; *Blake* v. *Shaw*, 7 id. 505; *Moore* v. *Fargo*, 112 id. 254; Drake on Attachments, § 222; *Thurber* v. *Blanck*, 50 N. Y. 80; *Hall* v. *Brooks*, 89 id. 33; *Scott* v. *Morgan*, 95 id. 508.) The plaintiff has a full and adequate remedy at law. (Code Civ. Pro. § 1704; *Edgerton* v. *Ross*, 6 Abb. Pr. 191.) The action cannot be maintained upon the ground that the plaintiff, in order to protect his rights, will be required to commence or to defend a multiplicity of suits. (Pom. Eq. Juris. §§ 245, 257, 264; *Marsilus* v. *M. C. Co.*, Saxton, 31.) An injunction will not lie in an action brought by a trespasser to prevent the injured party from pursuing his legal rights. (*Littlejohn* v. *Attrill*, 94 N. Y. 619.) The sheriff, by reason of the fact that he excepted to the sureties, waived his right to retain the property. (Code Civ. Pro. § 1706; *Hofheimer* v. *Campbell*, 59 N. Y. 273.) The owners of the piece goods (the replevinors) had a right to replevy the manufactured clothing containing the said goods. (*F. N. Bank* v. *Dunn*, 97 N. Y. 149; *Silsbury* v. *McCoon*, 3 id. 379; *Newton* v. *Porter*, 69 id. 137; *Guckenheimer* v. *Angevine*, 81 id. 397; *In re Calvin* v. *Gleason*, 105 id. 261; *Curtis* v. *Croat*, 6 Johns. 168.) The custody of the property replevined cannot be taken from the court issuing the writ in a replevin action, and for that reason the Supreme Court had no jurisdiction to enjoin the replevin actions which had been commenced by a number of the defendants in the City Court of New York. (Hilliard on Injunc. [3d ed.] 265; High on Injunc. § 45; *E. R. Co.* v. *Rumsey*, 45 N. Y. 637.)

*Edward F. Dwight* for appellants Oelberman and others. The complaint does not disclose equities sufficient to authorize the relief granted by the order. (Pom. Eq. Juris. § 250; *Town of Venice* v. *Woodruff*, 62 N. Y. 462; *Doggett* v.

*Hart*, 5 Fla. 215 ; 2 Kent's Comm. § 363 ; *Silsbury* v. *McCoon*, 3 N. Y. 379 ; *Calvin* v. *Gleason*, 105 id. 256, 261 ; *Guckenheimer* v. *Angevine*, 81 id. 394 ; *Joslyn* v. *Cowee*, 60 Barb. 48 ; *I. R. M. Co.* v. *Hertin*, 37 Mich. 92 ; *Newton* v. *Porter*, 69 N. Y. 133, 136 ; *Stuart* v. *Phelps*, 39 Ia. 14 ; *Curtis* v. *Groat*, 6 Johns. 168 ; *Tyson* v. *Weber*, 81 Ala. 470 ; Code Civ. Pro. § 1709 ; *Savage* v. *Allen*, 67 N. Y. 23 ; *Wolfe* v. *Burke*, 56 id. 115.) There is no common right among the defendants herein, nor any common question or issue upon which the separate right of each depends ; neither is there a common subject-matter of litigation among them. A bill of peace is, therefore, improper. (Bispham's Eq. Juris. §§ 415, 417 ; Adams' Eq. Juris. 200 ; *Dilly* v. *Doig*, 2 Ves. 486 ; *Lapeer County* v. *Hart*, Harr. Ch. 157 ; *Randolph* v. *Kinney*, 3 Rand. 394 ; *Saxton* v. *Davis*, 18 Ves. 72 ; *Whaley* v. *Dawson*, 2 S. & L. 367–370 ; *L. & B. S. R. R. Co.* v. *Goodman*, 25 Barb. 469 ; *M. E. R. Co.* v. *N. Y. E. R. Co.*, 29 Hun, 309 ; *Saratoga* v. *Seabury*, 11 Abb. [N. C.] 461 ; *Harris* v. *Carpenter*, 91 U. S. 254 ; *S. B. L. Co.* v. *Town of Hayward*, 20 Fed. Rep. 422 ; *Cutting* v. *Gilbert*, 5 Blatch. 259 ; *M. F. A. Co.* v. *Stockton Works*, 38 Fed. Rep. 378 ; *West* v. *Randall*, 2 Mason, 181 ; *Killian* v. *Ebbinghans*, 110 U. S. 568.) The relief granted by the order interferes with remedies and priorities to which defendants are entitled by law. It is, therefore, improper. (*Chittenden* v. *Davidson*, 20 J. & S. 421 ; Code Civ. Pro. § 1706 ; *Acker* v. *White*, 25 Wend. 614 ; Wells on Replevin, § 480 ; *Gimble* v. *Ackley*, 12 Ia. 27 ; *F. N. Bank* v. *Dunn*, 97 N. Y. 149 ; *Hagan* v. *Lucas*, 10 Pet. 400 ; *Walling* v. *Miller*, 108 N. Y. 73 ; Freeman on Executions, § 195.) The sheriff should have been made a party plaintiff to this action. (Code Civ. Pro. §§ 655, 677, 678 ; *Scott* v. *Morgan*, 94 N. Y. 508 ; *Steffin* v. *Steffin*, 4 Civ. Pro. Rep. 179 ; *Hall* v. *Brooks*, 89 N. Y. 33 ; *Bowe* v. *Arnold*, 31 Hun, 256 ; *Barker* v. *Matthews*, 1 Den. 335 ; *C. N. Bank* v. *Shaw*, 46 Hun, 389 ; *Skinner* v. *Stuart*, 39 Barb. 206 ; *Rinchey* v. *Stryker*, 28 N. Y. 45 ; Freeman on Executions, § 195.)

*John Notman* for appellants Juillard and others. The moving papers show clearly that the plaintiff has no standing in a court of equity. (Code Civ. Pro. § 655 ; *Hall* v. *Brooks*, 89 N. Y. 33.; *Mills* v. *Block*, 30 Barb. 549 ; *Scott* v. *Morgan*, 94 N. Y. 508.) The complaint cannot be sustained either as a bill of peace or as a complaint in the nature of a bill of peace. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. 592 ; *S. W. Works* v. *Yoemans*, L. R. [2 Ch. App.] 8 ; *T. A. R. R. Co.* v. *Mayor, etc.*, 59 N. Y. 159 ; *Town of Venice* v. *Woodruff*, 62 id. 462.) The respondent has an adequate remedy at law. (Code Civ. Pro. § 1704.) The court has jurisdiction to hear this appeal. (*Brinkley* v. *Brinkley*, 50 N. Y. 184, 203 ; *Townsend* v. *Hendricks*, 40 How. Pr. 143, 161.)

*Benno Lowey* for appellants Haas and others. The present action cannot be maintained in any form, for the reason that if the rights of the plaintiff are in any wise impaired it has a complete remedy at law. This being so, the appointment of a receiver and the granting of an injunction were improper, and the order should be vacated. (Code Civ. Pro. §§ 1689, 1695, 1736 ; *Talcott* v. *Belding*, 4 J. & S. 84 ; *Bullis* v. *Montgomery*, 50 N. Y. 352 ; *Martin* v. *Gilbert*, 119 id. 298 ; *A. B. & C. Co.* v. *Pratt*, 74 id. 400 ; *Manning* v. *Keenan*, 73 id. 45.) It appears affirmatively from the complaint and affidavits herein that by the proceedings of the replevying creditors the rights of the plaintiff have been in no wise infringed upon or impaired. (*Silsbury* v. *McCoon*, 3 N. Y. 379 ; *Nichols* v. *Drew*, 94 id. 22 ; *Church* v. *Stanton*, 9 N. Y. S. R. 121 ; *Hynes* v. *F. L. & T. Co.*, 9 N. Y. Supp. 260.) The present action cannot be maintained as a bill of peace, because the claims sought thereby to be adjudicated upon do not arise out of the same transaction ; the person who is threatened with a multiplicity of suits is not even a party, and a final determination of the controversy cannot possibly be had in this action. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. 592 ; *Bd. Suprs.* v. *Deyo*, 77 id. 219.; *E. R. Co.* v. *Ramsay*, 45 id. 637.) The plaintiff had no

such title to or lien upon the property as authorized the bring-ing of the present action. (*T. G. Co.* v. *Smith,* 110 N. Y. 83; *Anthony* v. *Wood,* 96 id. 180; *Gibson* v. *N. Bank,* 98 id. 87; *Scott* v. *Morgan,* 94 id. 508; Story on Bail, §§ 93, 129; *Barker* v. *Mathews,* 1 Den. 335; *Peck* v. *Tiffany,* 2 N. Y. 451; *Browning* v. *Hanford,* 5 Den. 594; 2 Hill. on Torts, 254; *People* v. *Hopson,* 1 Den. 578; *Swezey* v. *Lott,* 21 N. Y. 484; *Bowe* v. *Arnold,* 31 Hun, 256; *Hall* v. *Brooks,* 89 N. Y. 33; *Terwilliger* v. *Wheeler,* 35 Barb. 620.) The orders appealed from are erroneous because they are arbitrary and oppressive, and sanction a conceded injustice with a view of preventing a possible wrong. (*G. W. Co.* v. *Ripley,* 6 Robt. 530.)

*Otto Horwitz* for respondent. The plaintiff, as an attach-ing creditor, has a standing in a court of equity, and may apply for an injunction and other equitable relief. (*Thayer* v. *Wil-lett,* 9 Abb. Pr. 325; *F. N. Bank* v. *Dunn,* 97 N. Y. 159; *Hendricks* v. *Robinson,* 2 Johns. Ch. 283; *McElwain* v. *Willis,* 9 Wend. 548.) The relief requested by the plaintiff is in the nature of a bill of peace, for the purpose of restrain-ing a multiplicity of suits, and as such is clearly within the equitable jurisdiction of the court. (Pom. Eq. Juris. § 269; *Tenham* v. *Herbert,* 2 Atk. 483; *S. W. Works* v. *Yeoman,* L. R. [2 Ch. App.] 8; *Morgan* v. *Morgan,* 3 Stewart, 383; *Brinckerhoff* v. *Brown,* 6 Johns. Ch. 199; *Ostrander* v. *Webb,* 114 N. Y. 95; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 17 id. 592; *Saratoga Co.* v. *Deyoe,* 77 id. 219.) The plain-tiff, the National Park Bank, has no adequate remedy at law. (*A. Ins. Co.* v. *Fish,* 1 Paige, 90; *Newcombe* v. *F. N. Bank,* 51 Hun, 220.) The relief asked for is such that if it be refused the resulting injury cannot be easily remedied, and it should, therefore, be granted. (*United States* v. *Duluth,* 1 Dillon, 469; *Ogden* v. *Kipp,* 6 Johns. Ch. 160; *N. Y. P. Co.* v. *Fitch,* 1 Paige, 97.) The restraint of a multiplicity of suits is of itself sufficient to give jurisdiction to a court of equity. (Pom. Eq. Juris. § 243.) Assuming that the restraint of a

multiplicity of suits does not alone give jurisdiction, the fact that no primary equity exists, where the injury threatened is irreparable and oppressive, is no ground for refusing the injunction. (*Scofield* v. *Van Bokkelen*, 5 Jones' Eq. 342; *McRae* v. *R. R. Co.*, id. 395.)

Finch, J. The only question presented by these appeals is whether the court, sitting as a court of equity, had jurisdiction of the subject-matter of the action; for, if it had, the order appointing a receiver, and enjoining the prosecution of the suits in replevin instituted by the several defendants, was not only within the discretion of the court, but absolutely essential to the relief which it was its duty to administer. We must determine that question principally upon the allegations of the complaint. No answers had been served when the motion was made, and the equities of the complaint, if such existed, were questioned only by the affidavits used to resist the motion. We may and should take them into the account, but remembering that they constitute defensive allegations and raise to some extent issues of fact which the trial only can determine. The inquiry here is whether upon the plaintiff's complaint, read in the light of the defendants' affidavits, there was jurisdiction in equity over the subject-matter involved, and in answering that question we should recur to the principal facts about which there is no practical dispute, before considering those about which the parties seem to disagree.

The papers on both sides, assuming the truth of their concurring allegations, assert one general fact, affecting all the parties alike and in the same substantial manner. That fact is that the members of the firm of Levy Brothers & Co. formed the purpose, and proceeded steadily and continuously in its execution, of defrauding those with whom the firm was able to deal, by procuring their money or property without payment or accounting, and intending not to pay or account, and effecting the purpose by false representations of their financial ability, and false appearances of solvency when utterly and wholly insolvent. The plaintiff corporation loaned to the

firm by discounts of their paper about ninety thousand dollars in reliance upon these fraudulent assurances of the strength and safety of their indorsements, and finding itself thus deceived attached the whole stock of Levy Brothers & Co. which it found in their possession and apparent ownership. The writ was issued upon proof of the representations made and upon the two affidavits of Lilienthal and Hershfield which disclosed the falsity of such representations, the insolvency of the firm, and the fraudulent character of its business dealings. The levy of the plaintiff and the disclosures of the affidavits filed aroused into activity the other victims of the same general fraud. Most of them had sold goods to the firm, induced thereto by the same or similar false representations of solvency and financial ability. These creditors chose to rescind their contracts of sale for fraud, and in so doing many of them refer to the affidavits on which plaintiff's attachment was issued as the source of their knowledge that the representations made to them were false and fraudulent. Each acting in his own behalf brought a separate action of replevin against the sheriff and the fraudulent vendees to recover the specific property sold, until about fifty of such actions were brought and the writs placed in the hands of the coroner for execution. It is extremely probable that substantially the same representations which were made to the plaintiff were made whenever needed to the fifty or more vendors, and while separate proof thereof will be required, the evidence of falsity and of fraud will be common to them all, and once proved be available for each. It is evident, therefore, that the subject to be investigated is at bottom the fraudulent scheme of Levy Brothers & Co. which enveloped all the parties before the court and affected them all in the same general way although in different degrees and, because of that fact, that to some extent the same evidence which will establish the right of one will equally establish the right of all the rest; so that if a court of equity intervenes to prevent a multiplicity of actions only where they rest upon some common right invaded or some common injury inflicted, a doctrine to which, in those broad terms, I do not at present

accede, there is here, as the subject of investigation, the one fraudulent scheme of the debtors inflicting in the same way a similar injury upon all their victims, differing in degree, but springing from one general purpose worked out in one general way. In that respect the case reminds me of *Supervisors of Saratoga Co.* v. *Deyoe* (77 N. Y. 219), in which there had been an over-issue of notes by the treasurer creating a false debt against the county. Each holder could sue at law upon his notes and the county defend, but there was one scheme of fraud, common to all in its purpose, working its wrong in the same way and differing only in its results as to persons and degree. That fact, coupled with the further circumstance that the false notes could with difficulty be separated from the true, and only by an investigation which should cover the whole fraud and settle all rights in the process, and so avoid a multiplicity of actions, furnished the grounds upon which the equitable jurisdiction was rested. The present case shows that remaining and corresponding feature in a somewhat different, but equally conclusive way. The stock levied upon by the sheriff consisted largely of manufactured clothing, into which had entered as separate elements the cloth of one vendor, the linings of another and the buttons of a third; or to the cloth which none of the vendors had sold had been added the linings of one and the buttons of another. How the angry claimants wrangled over the garments and nearly tore them apart, the worried deputy of the sheriff describes. The complaint shows that these claimants have directed the coroner to take upon his writs the whole manufactured article into which the goods of the respective creditors have entered, so that there may be three claimants for the same coat, or one who merely furnished the buttons may take it wholly from the attaching creditor. A court of law cannot divide the article, and so follows a rule, not unjust to the fraudulent debtor, but inequitable as against the attaching creditor, and very likely to be so as to some of the vendors, while a court of equity can turn the garments into money and distribute their value in just and fair proportion. How far these complications extend, we

cannot accurately know in advance of the trial, but they are alleged in the complaint as affecting generally the whole manufactured stock.

On this state of facts there is sufficient reason for maintaining the equitable jurisdiction. A subject-matter is presented within its adjudged and defined boundaries. A multiplicity of actions at law, involving conflicting claims to the same property, which a court of law could not solve without working injustice, founded upon one continuous and fraudulent scheme, inflicting a similar injury upon all, and different only in detail and degree, and where the legal remedy of fifty defenses to fifty replevin suits is shown to be destructive to the lien and right of the plaintiff, presents a state of facts which fully justifies the interference of equity.

But in behalf of some of the defendants, it is insisted that there are specific circumstances lying at the foundation of a few of the replevin suits which take those cases out of the doctrine asserted, and that as to the plaintiffs therein, made defendants in the equity suit, there is no equitable cause of action. One or more of the defendants intimate in their affidavits that the property replevied by them was delivered to Levy Brothers & Co. to be sold on commission, and never passed into their ownership at all; and one or more of the defendants assert that there is no dispute as to the identity of the unmanufactured goods which they claim, and no conflicting title thereto alleged by anyone except the plaintiff in the attachment. These facts, if satisfactorily established, may possibly prove to be a defense to the action as against such defendants. But these facts are new matter, alleged outside of the complaint, as to which the plaintiff will have a right to be heard. They amount to a denial in some degree of the plaintiff's general allegations, and may establish a defense without overturning or dislodging the jurisdiction. It often happens that jurisdiction over the subject-matter is followed by a refusal of the equitable remedy to some or all of the plaintiffs, or by a judgment dismissing the complaint as to some or more of the defendants. The plaintiff may come into

court with an equitable cause of action, plainly within the jurisdiction, and yet so fail on his facts, or be confuted by the defense, as to lose all right to equitable relief. But that result in general must await the developments of the trial. It is rare that the court is justified in turning the plaintiff out of court on a preliminary motion founded upon affidavits. The present complaint shows that the firm of Levy Brothers & Co. was composed of three persons; that one of them has absconded and cannot be found; that another is sick and has lost his mind; and that the third came into the firm after almost all of the fraudulent purchases were made, and that the plaintiff is necessarily ignorant of the character and circumstances of the purchases made by the firm. It is quite apparent that no one will defend the replevin suits unless it be the sheriff acting in behalf of the plaintiff, and it may very well be that the latter, while now unable to contradict the affidavits, may come to the trial prepared to do so. The complaint also alleges that the seizure by the coroner was far in excess of the value of the property claimed in the replevin suits.

So far as any of the defendants put themselves outside of the general scheme of fraud, and claim that there was no sale to the Levys at all, their affidavits are quite unsatisfactory. Mr. Gruber represents twelve firms and one individual and says that some of them, without naming which, "will contend" that the goods were simply consigned. Mr. Ewing deposes that his goods were delivered "upon memorandum only," but does not disclose the memorandum. He adds that they were "for inspection," and had "not been accepted." Possibly, if we had the facts instead of the affiant's conclusions we might think there had been an acceptance. All the other cases stand upon the general fraud authorizing a rescission, and while it may be that some of the defendants will be able to show that they claim nothing but unmanufactured goods, perfectly identified, and as to which there are no conflicting claims, yet the fact will not affect the general jurisdiction acquired, but may influence the judgment in the end to be rendered. Something of that kind appears to have happened

in *Ostrander* v. *Weber* (114 N. Y. 96), where the course of the trial evolved a purely legal right of one of the parties to a few distinct articles of the property, and the court ordered it to be sold separately. No harm can come to the defendants who shall show themselves to have a pure legal right which the equities in the complaint do not touch. If there proves to be no conflict over the goods remaining unmanufactured and no equitable cause of action as to them, the court may dismiss the complaint to that extent and allow the replevin actions to proceed. Any injury from delay will be likely to enter into damages for the detention. Or, as in the case cited, the court may order a separate sale of identified parcels.

But it is further suggested that neither the sheriff nor coroner are made parties. They may be brought into the litigation and should be so brought in as parties both in order that they may be bound by the judgment and be protected by it.

A further objection is made that the attaching creditor has no right or title in or to the property attached, and so has no standing in a court of equity to raise any question; and we are referred to the language of the late chief judge in *Scott* v. *Morgan* (94 N. Y. 508), which described the position of the plaintiff in an execution. As a statement of the legal right of the execution creditor no fault is to be found with it. The special property in the goods levied upon is in the officer who holds a legal title for the protection of his levy, but he holds it for the benefit of the levying and attaching creditor who thereby obtains an interest in and a lien upon the property. He is the real person interested and equity, which never suffers itself to be misled by a name or baffled by a definition, but deals with the substance and truth of things, can have no difficulty in recognizing the existing interest and lien of the creditor because it is worked out and made effectual through a legal title in the officer.

Our conclusion, therefore, is that there was jurisdiction to make the order, and it should be affirmed, with costs.

All concur.

Order affirmed.